John R. EVANS, Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a corporation.

No. 17083.

United States Court of Appeals
Third Circuit.

Argued April 5, 1968.

Decided Aug. 8, 1968.

Ronald H. Heck, Bagley, Sydor & Heck, Pittsburgh, Pa. (Joseph B. Bagley, Pittsburgh, Pa., on the brief), for appellant.

Frederick N. Egler, Egler, McGregor & Reinstadtler, Pittsburgh, Pa. (Edward A. Mihalik, Pittsburgh, Pa., on the brief), for appellee.

Before KALODNER, GANEY and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The plaintiff, John R. Evans, was injured during the course of his employment while attempting to dismantle a cardboard box cutting machine. He instituted this diversity action against the defendant, Liberty Mutual Insurance Company ("Liberty") his employer's workmen's compensation insurance carrier, alleging that Liberty's negligence in failing to "adequately inspect" the cutting machine and to warn plaintiff of its alleged unsafe condition caused his injury.

The action was tried to a jury. After the close of the evidence, Liberty moved for a directed verdict in its favor. The motion was granted and the jury discharged.

On this appeal plaintiff contends that (1) an injured employee may sue his

employer's workmen's compensation carrier for injuries caused by the carrier's alleged negligence in failing to properly conduct its inspection of its insured's premises, under our decision in Mays v. Liberty Mutual Insurance Company, 323 F.2d 174 (3 Cir. 1963); and (2) sufficient evidence was presented by plaintiff to warrant submission of his case to the jury.

In reply, Liberty contends (1) this Court should reconsider and overrule our holding in Mays in the light of a later Pennsylvania trial court holding[1] that a workmen's compensation insurance carrier shares an employer's immunity from common law liability; and (2) plaintiff's evidence failed to establish a cause of action under either Section 323 or Section 324A of the Restatement of Torts, 2d.

We do not reach Liberty's first contention, because it is unnecessary to do so since we subscribe to its second contention.

Viewed in "a light most favorable to the plaintiff",[2] his evidence establishes the following facts:

On August 18, 1964, plaintiff was assigned the task of dismantling a cardboard box cutting machine. A wrench he was using slipped, causing his hand to strike against one of the machine's cutting blades with resulting serious injury. The machine was not equipped with a protective guard and the cutting blades were exposed. Liberty, prior to the accident, had made four "safety" inspections of plaintiff's employer's plant and made specific "safety" recommendations as a result of these inspections. It had not, however, made an inspection of the particular machine involved in this accident, nor had it made any recommendations with respect to it.

The purpose of Liberty's inspections was threefold: (1) to advise and counsel those whom it insured "on programs which they should adopt to reduce the cost and frequency of accidents"; (2) to provide a method of "gathering underwriting information"; and (3) "to help the sales department in the solicitation of new business and in securing" business already enjoyed. Liberty had neither power nor authority to compel an insured to act upon any of its safety recommendations and performed only an advisory function in making them. In the event an insured failed to comply with a recommendation which it deemed critical, Liberty only could pursue the alternative of discontinuing its coverage. Each of its insured employers "is responsible for its own safety record, or safety program".

There was no evidence that plaintiff's employer had ever followed Liberty's safety recommendations. Further, there was no evidence that Liberty was under a legal duty or contractual obligation to inspect the plant of plaintiff's employer.

The crux of plaintiff's contention here is that while Liberty was not under a legal duty or contractual obligation to inspect its insured plant, it "gratuitously" undertook to make such inspections, and that being so, it was liable to plaintiff for his damages under Section 323 of the Restatement of Torts, 2d, inasmuch as its failure to inspect the machine which figured in the accident was, in the plaintiff's view, "unreasonable or negligent".

---

1. Brown v. Travelers Insurance Companies, 37 Pa.Dist. & Co.R.2d 111. (Court of Common Pleas No. 2, Philadelphia County 1965). It may be noted that an amendment to the Pennsylvania Workmen's Compensation Act, 77 P.S. § 501, enacted after our decision in Mays, provides, inter alia, that a workmen's compensation insurance carrier "shall be entitled to all of the employer's immunities and protection hereunder". The amendment was effective January 25, 1966, following the accrual of the cause of action in the instant case.

2. Brough v. Strathmann Supply Co., Inc., 358 F.2d 374, 377 (3 Cir. 1966).

Section 323 "Negligent Performance of Undertaking to Render Services" provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

Section 324A of the Restatement, adverted to by the District Court in its Opinion [3] denying plaintiff's motion for a new trial, provides:

"Liability to Third Person for Negligent Performance of Undertaking.

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The District Court premised its direction of a verdict in favor of Liberty on the grounds that plaintiff had failed to adduce evidence that Liberty's failure to inspect his machine (1) had increased "the risk of harm" or (2) that plaintiff

suffered harm because of his "reliance" upon Liberty's undertaking, as required under Sections 323 and 324A.

On review of the plaintiff's evidence (Liberty presented no defense testimony) we are of the opinion that the District Court did not err in directing a verdict in Liberty's favor against plaintiff.

In DeJesus v. Liberty Mutual Insurance Company, 423 Pa. 198, at page 201, 223 A.2d 849, at page 850, (1966), it was held that under Section 323:

"* * * negligent performance or nonperformance must increase the risk of harm and * * * there must be reliance by the injured plaintiff upon the defendant's performing the service he has undertaken to render".

In the instant case, as the District Court correctly found, plaintiff failed to adduce evidence that Liberty's "nonperformance", viz., failure to inspect his machine, increased his "risk of harm" *or* that plaintiff relied on an inspection.

Further, there was no evidence in the instant case that Liberty had "undertaken" to make an inspection of the entire plant of plaintiff's employer. The evidence, indeed, affirmatively established that Liberty only made what may be described as "spot" inspections. As earlier stated, it was under no legal duty or contractual obligation to make "complete" inspections, and the evidence established that primary responsibility for the "safety" of the plant of plaintiff's employer remained with the latter.

It is well-settled under Pennsylvania law, controlling in this diversity action, that plaintiff must "prove, inter alia, the existence of a duty owed to him and a breach thereof",[4] and plaintiff has failed to adduce such proof here.

For the reasons stated, the Order of the District Court entering a directed verdict in favor of Liberty and against plaintiff will be affirmed.

3. The Opinion of the District Court is presently unreported.

4. Peatross v. Southwark Minit-Man Corp., 415 Pa. 129, 132, 202 A.2d 102 (1964).