Robert P. SUMPTER, Appellant,

v.

**CITY OF MOULTON, Appellee.**

No. 92–1861.

Court of Appeals of Iowa.

July 11, 1994.

**430**

John A. Pabst of Clements, Pabst, Hansen & Maughan, Albia, for appellant.

Lloyd E. Keith of Keith, Orsborn, Bauerle, Milani & Neary, Ottumwa, for appellee.

Considered by DONIELSON, C.J., and HABHAB and CADY, JJ., but decided by DONIELSON, C.J., and HAYDEN, SACKETT, HABHAB, CADY, and HUITINK, JJ.

CADY, Judge.

This is a negligence action brought by Robert Sumpter against the city of Moulton after Sumpter suffered a heart attack while cleaning the public ditches near his home. Sumpter claimed the city was negligent in failing to keep the ditches open, and this omission caused his injury.

The important facts began on Friday, June 22, 1990, when the city sent Sumpter an abatement notice giving him fifteen days to mow the weeds on four lots he owned south of his home. Sumpter went to see the city clerk. He became extremely agitated and said he would not mow the weeds until the city cleaned the ditches around his land.

The next day, however, sixty-five-year-old Sumpter set out to clean the ditches himself. After working for approximately four hours, he felt pain in his chest and arm. He was admitted to the hospital, and diagnosed as having had a mild heart attack.

Sumpter had not had a physical exam since his retirement five years earlier, and thought he was in excellent health. An angiogram revealed Sumpter had heart disease with ninety to ninety-five percent blockage in his right coronary artery. According to his treating physician, Sumpter complained of a short episode of chest pain the night before he cleaned the ditches. This was denied by Sumpter. Sumpter remained in the hospital for a week. He was later admitted to a hospital in Des Moines for bypass surgery. His physician testified that bypass surgery was inevitable given the extent of Sumpter's blockage, unless Sumpter had suffered a fatal heart attack.

Sumpter testified at trial that the blocked ditches caused standing water which flooded his basement. The jury returned a verdict finding the city negligent, but concluded the negligence did not proximately cause Sumpter's injuries.

Sumpter appeals. He argues the district court erred in instructing on the issues of intervening cause and proximate cause, and in failing to instruct on the issues of aggravation of pre-existing condition or previous infirm condition.

## I. INTERVENING CAUSE INSTRUCTION.

■ The law does not impose liability for negligence unless the breach of duty of care is also the actual and legal cause of an injury. *See Blackhawk Bldg. Sys., Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg*, 428 N.W.2d 288, 290 (Iowa 1988). Even when causation is established, however, a defendant may be relieved of liability if a later-occurring event breaks the causal events between the original negligent conduct and the injury. *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991). This break in causation is commonly known as "superseding intervening cause." The law considers this type of intervening cause to be the effective harm, and relieves the defendant from liability for the earlier negligent act or omission.

■ An "intervening cause" is a new and independent force which actively operates in producing harm to another after the defendant's negligent act or omission has been committed. *State v. Marti*, 290 N.W.2d 570, 586 (Iowa 1980). An intervening force becomes a "superseding cause," and insulates a defendant from liability, when the intervening act was not a normal consequence of the defendant's act or was not reasonably foreseeable. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 15 (Iowa 1977).

■ After instructing on proximate cause, the trial court charged the jury with the following instruction:

Under Iowa law, someone who is negligent may be relieved of liability for his negligent conduct if another circumstance breaks the chain of causal events between the negligence and injury. This is called an "intervening cause."

An intervening cause is one which actively operates in producing harm to another after one actor's negligent act of omission has been committed. An intervening cause is an independent force which breaks the causal connection between the original wrong and the injury complained of. However, an intervening cause will not relieve a negligent defendant of liability if that cause was a normal consequence of the defendant's conduct or was reasonably foreseeable by that defendant.

Sumpter argues it was improper to submit the instruction because there was no evidence of an intervening event subsequent to the negligent act of the city.

The city claims the intervening event was Sumpter's own conduct of physically "over-

exerting" himself in cleaning the ditch near his home. It was this later conduct, the city asserts, which caused the heart attack and justified the intervening cause instruction.

■ Generally, the doctrine of intervening cause embraces the intervention of the acts of a third-party or an outside force, not the actions of the injured plaintiff. *See Schnebly v. Baker,* 217 N.W.2d 708, 729 (Iowa 1974) (superseding cause involves an act of a third person or other force); *Blessing v. Welding,* 226 Iowa 1178, 1184, 286 N.W. 436, 439 (1939) (rule applies to the act of a third party). *See also Hickey v. Zezulka,* 439 Mich. 408, 487 N.W.2d 106, 118 (Mich.1992); *Beirne v. Security Heating–Clearwater Pools Inc.,* 759 F.Supp. 1120, 1123 (M.D.Pa.1991) (intervening cause is not properly applied to the plaintiff's conduct); Restatement (Second) of Torts § 440. We recognize, however, that some jurisdictions have applied the doctrine to conduct of the injured plaintiff. *See Caraballo v. United States,* 830 F.2d 19, 22 (2d Cir.1987) (applying New York law); *Faris v. Potomac Elec. Power Co.,* 753 F.Supp. 388, 390 (D.C.1991); 57A Am.Jur.2d *Negligence* § 650 (1989). In addition to requiring the plaintiff's conduct to be wholly unforeseeable, these cases often involve acts of the plaintiff that rise above mere negligence. 57A Am.Jur.2d *Negligence* § 650. On the other hand, "if the acts of the plaintiff are within the ambit of the hazards covered by the duty imposed upon the defendant, they are foreseeable and do not supersede the defendant's negligence." 57A Am.Jur.2d *Negligence* § 652. Moreover, if the negligent act of the defendant establishes the stimulus for the plaintiff's act, there is ordinarily no break in the chain of events to relieve the defendant from liability, and the subsequent acts of the plaintiff cannot constitute the superseding cause of the injury. 57A Am.Jur.2d *Negligence* § 648; *Hickey,* 487 N.W.2d at 119–20. Because of our preference for addressing the conduct of parties under the concept of comparative fault, and

under the circumstances of this case, we believe the intervening cause of instruction was improperly given.

■ Substantial evidence must be presented at trial to support the submission of an instruction. *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 150 (Iowa 1992). Evidence is substantial when reasonable minds would accept it as adequate to reach the conclusion. *Id.* Under this standard, the evidence in this case did not support the intervening cause instruction.

The duty of care imposed on the city was not challenged on appeal.[1] This duty required the city to keep the culverts and ditches open. Sumpter was an adjoining landowner. He was doing no more than the city was obligated to do by law. His actions were not alleged to have been wrongful in any way. They were done in direct response to the failure of the city to act. The city created the stimulus for Sumpter to act, and exposed him to a risk of harm. Under the circumstances, Sumpter's actions could not constitute an intervening, superseding cause of his injury. *See* Restatement (Second) of Torts § 442 (1965).

■ While we are not prepared to hold that the conduct of a plaintiff could never constitute a superseding cause, we believe caution must be taken in applying the concept to conduct of a plaintiff since the result is to bar recovery. The principles of comparative fault could be seriously diluted by utilizing the conduct of a plaintiff as an intervening cause. The preferred approach is to judge the conduct of the plaintiff under comparative fault. The doctrine of superseding cause should be strictly limited to cases involving acts that are independent of the alleged negligence of the defendant.

■ Since the jury found the negligence of the city did not cause the injuries claimed by Sumpter, we must conclude the instruction was prejudicial.[2] *See Schneider*

---

1. The source of this duty is found in Iowa Code, section 364.12 (1993). We do not consider whether this statute actually imposes a duty on the city to protect Sumpter from harm.

2. We acknowledge that the presumption of prejudice created by an instruction not supported by the evidence is overcome when the underlying issue which gave rise to the instruction should have been resolved against the complaining party as a matter of law. *Curran Hydraulic Corp. v.*

*v. Swaney Motor Car Co.*, 257 Iowa 1177, 136 N.W.2d 338 (1965) (reversible error to submit instruction not supported by some evidence).

■ We recognize the undisputed evidence in the case that Sumpter's heart attack was inevitable. He had massive coronary artery blockage. Given these facts, the jury could have decided the city's negligence was not a proximate cause because it was not a substantial factor in producing the heart attack. Notwithstanding, the introduction of the concept of superseding cause into the case had a direct impact on the proximate cause analysis. *See Schnebly*, 217 N.W.2d at 728. It permitted the jury to free the city from liability even if its negligent conduct was a substantial factor in producing the harm. *Id.*; Restatement (Second) of Torts § 440. Consequently, Sumpter was clearly prejudiced by the instruction.[3]

## II. AGGRAVATION OF PRE-EXISTING CONDITION INSTRUCTION

Because we reverse for a new trial, we also consider the remaining claims involving the jury instructions.

■ The trial court denied Sumpter's instruction on aggravation of pre-existing condition and previous infirm condition. Requested jury instructions are required to be given when they properly state the law and

apply to the facts in the case. *Stover v. Lakeland Square Owner's Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989).

■ A tortfeasor whose act results in an injury to another, when superimposed upon a prior latent condition, may be responsible in damages for the full disability. *Benn v. Thomas*, 512 N.W.2d 537, 539 (Iowa 1994); *Becker v. D & E Distrib. Co.*, 247 N.W.2d 727, 731 (Iowa 1976). This doctrine is commonly known as the "eggshell plaintiff" rule, and is applicable to both the causation and damage elements of a negligence claim. *Benn*, 512 N.W.2d at 539. As it relates to causation, the rule essentially removes the foreseeability limitation typically required in the determination of proximate cause. *Id.* at 539–40.

■ The city argues the "eggshell" instruction was properly refused by the trial court since Sumpter's extensive coronary disease made his heart attack inevitable, and because his subsequent by-pass surgery was successful. We agree that a defendant cannot be liable to an "eggshell" plaintiff if the pre-existing condition alone causes the injury. *See Dunn v. Cadiente*, 516 N.E.2d 52, 56 (Ind.1987). In this case, however, Sumpter's physician testified that the physical exertion by Sumpter in cleaning the ditch was the

*National—Ben Franklin Ins. Co. of Illinois*, 261 N.W.2d 822, 828 (Iowa 1978). The underlying issue supporting the disputed instruction in this case was causation. Clearly, an act or omission is not the cause of an event if the event would have occurred without the act or omission. William L. Prosser, *Law of Torts* § 41, at 238 (4th ed. 1970). However, causation in fact presents a fact issue. *Schreckengast v. Hammermills, Inc.*, 369 N.W.2d 809, 810 (Iowa 1985). This determination is ordinarily a question for the jury, and may be decided as a matter of law only in exceptional cases. Iowa R.App.P. 14(f)(10). The question becomes one of law only where the facts are clear and undisputed, and the relationship of cause and effect so apparent to every candid mind that only one conclusion may be fairly drawn. *Berhow v. Kroack*, 195 N.W.2d 379, 385 (Iowa 1972). Although this case may border on the exceptional, we believe the question is one for the jury under the present state of the record. The heart attack may have been inevitable, but the omission by the city may have aggravated Sumpter's condition and hastened the process. *See Walsh v. Snyder*, 295 Pa.Super 94, 441 A.2d 365, 369–70 (1981). There was medical testimo-

ny that Sumpter's pre-existing heart disease would lead to problems at some point in time, but that time was unknown. Sumpter testified his chest pain and related problems did not begin until several hours after he began cleaning the ditches. Finally, there was medical testimony that Sumpter's physical activities "initiated a chain of events which caused" his chest pain, subsequent damage, and ultimate surgery. Furthermore, we cannot conclude as a matter of law that some injury was not reasonably foreseeable from the failure to maintain the ditches.

3. We recognize authority indicating that the improper inclusion of an instruction on superseding cause does not ordinarily result in reversible error. *See* 57A Am.Jur.2d *Negligence* § 606 (1989). The intervening cause instruction in this case, however, relieved defendant from liability if the intervening cause (Sumpter's overexertion) was not foreseeable. Foreseeability is the correct test to use to help determine the element of proximate cause. Yet, the proper focus of foreseeability relates to the injury or harm sustained, not the foreseeability of the particular act of the plaintiff.

event which initiated the heart attack. This medical testimony is sufficient to generate a jury question on causation. *See Benn*, 512 N.W.2d at 539. Moreover, Sumpter's injury is not rendered uncompensable simply because it may have been inevitable due to his pre-existing condition. A tortfeasor is liable for damages suffered by an "eggshell" plaintiff which are a natural consequence of the accident, even though the plaintiff may inevitably suffer similar injuries from a pre-existing condition unrelated to the accident. *Anderson v. Milwaukee Ins.*, 161 Wis.2d 766, 468 N.W.2d 766, 768–69 (1991). The city's argument is relevant in determining the amount of damages. *Id. See Holladay v. Chicago, Burlington, and Quincy R.R.*, 255 F.Supp. 879 (S.D.Iowa 1966) (evidence that plaintiff's pre-existing condition would have worsened with time without defendant's negligence is considered in determining the extent of future damages). It was error to refuse to submit Sumpter's requested instructions on pre-existing condition.

### III. *PROXIMATE CAUSE INSTRUCTION*

■ Finally, the trial court modified the uniform jury instruction (700.3) on proximate cause by substituting the phrase "substantial, foreseeable factor" for "substantial factor" and adding the following paragraph:

"Foreseeable" means that the harm suffered was the natural and probable consequence of the complained of act. A "foreseeable" consequence is one which a reasonably prudent person would anticipate as likely, though not necessary, to result from the performance or nonperformance of a given act.

■ Trial courts have discretion to modify or rephrase the uniform jury instructions to meet the precise demands of each case as long as the instructions fully and fairly embody the issues and applicable law. *Norton v. Adair County*, 441 N.W.2d 347, 358 (Iowa 1989). In this case, the trial court injected the concept of foreseeability into the substantial factor test.

■ Causation is a necessary element in all negligence cases. It is actually composed of two related but separate concepts.

The first considers the actual cause of the harm. This is known as "cause-in-fact." The second part embraces the legal cause of the injury. This is known as "proximate cause." Even though an act of the defendant may be the factual or actual cause of the plaintiff's injury, liability will only be imposed if it is also a proximate or legal cause of the injury.

■ The test to determine the actual cause prong of causation is known as *sine qua non;* but for the defendant's conduct, the harm would not have occurred. *State v. Marti*, 290 N.W.2d at 585. The test to determine proximate or legal cause is more involved. Generally, an actor's conduct is a proximate or legal cause of harm to another if the conduct is a "substantial factor" in producing the harm and there is no other rule of law which relieves the actor of liability because of the manner in which the negligence resulted in the harm. *Kelly*, 476 N.W.2d at 349. Iowa follows the Restatement (Second) of Torts in using the "substantial factor" test to help determine the existence of proximate or legal cause. *Id.; Frederick v. Goff*, 251 Iowa 290, 298, 100 N.W.2d 624, 629 (1960). This test is found in uniform instruction 700.3, together with the "but for" test.

The word "substantial" is used to express the notion that the defendant's conduct has such an effect in producing the harm as to lead reasonable minds to regard it as a cause. Restatement (Second) of Torts § 431 cmt. a. Numerous factors are considered to help determine whether negligent conduct is a "substantial factor" in producing the harm, including the existence and extent of other factors, the continuation of the force created by the defendant, and the lapse of time involved. Restatement (Second) of Torts § 433 cmt. a. The "substantial factor" test originated to help resolve situations involving multiple causes to an event. *See* William L. Prosser, *Law of Torts* § 41, at 240 (4th ed. 1970).

■ The concept of foreseeability, on the other hand, is a component to proximate cause to help determine the extent to which the law should impose liability for negligence.

It goes beyond the substantial factor analysis. It reflects a legal judgment and is rooted in social policy. *Kelly,* 476 N.W.2d at 349. The policy is based on fairness and justice, and seeks to restrict legal responsibility of a tort-feasor to those causes that are so closely connected with the result that our legal system is justified in imposing liability. Prosser, at 237. If it is not possible for a defendant to have reasonably foreseen that some injury would naturally result to a plaintiff from the actions that actually caused the harm, there can be no liability for any injury that in fact occurred. *See Nachazel v. Miraco Mfg.,* 432 N.W.2d 158, 160 (Iowa 1988); *Coleman v. Hall,* 161 N.W.2d 329, 335 (Iowa 1968) (no liability may be imposed if, looking back from the injury, the connection between the negligence and injury appears unnatural, unreasonable and improbable in light of common experience). It is not necessary to foresee the extent of the harm or the manner it occurred to establish the essential connection, only the existence of some injury to someone. *Dennis v. Merrill,* 257 N.W. 322, 324 (Iowa 1934).

■ While the substantial factor test and the concept of foreseeability can join to form the foundation of the proximate cause analysis, they should be considered separately. Foreseeability actually comes into play after a determination has been made that the defendant's conduct was a substantial factor in producing plaintiff's injury. *See* Restatement (Second) of Torts § 435. The modified instruction submitted by the trial court blurs the distinction between "substantial factor" and foreseeability. It also failed to fully explain the concept of foreseeability as a legal limitation on the responsibility for harm. In particular, the instruction failed to inform the jury that the specific harm or consequence that resulted need not be foreseeable. Accordingly, the instruction, as modified, should be avoided on retrial.

■ The "substantial factor" test is actually more compatible with a factual causation analysis, than a legal causation analysis. *See* Prosser, at 248; Restatement (Second) of Torts § 433. The rules which frame the legal limits of responsibility for harm, such as foreseeability and intervening cause, can

be properly viewed as exceptions to recovery under the "substantial factor" test. They are generally reserved to cases where it is urged by the defendant that the law should restrict liability even though his or her conduct may have been a substantial factor in producing the harm to the plaintiff. This may be a useful approach in preparing the causation instructions on retrial.

In wrestling with unique or special issues at trial, such as foreseeability or intervening cause, it must be remembered that it is the responsibility of the court to declare the existence or non existence of any rule which relieves a tortfeasor from responsibility for harm which the person's conduct was a substantial factor in producing. Restatement (Second) of Torts § 453. The intervening cause instruction and the modified proximate cause instruction make up two such rules. They must, therefore, be given with caution, and only when supported by the underlying facts of the case. If the facts are undisputed, it becomes the duty of the court to apply the facts to the limiting rules. If reasonable persons could differ on whether some harm, for example, was foreseeable, the court should leave the application of the rules for the jury. Restatement (Second) of Torts § 453 cmt. b.

We reverse and remand for a new trial.

**REVERSED AND REMANDED.**

All judges concur except SACKETT, J., who dissents.

SACKETT, Judge (dissenting).

I dissent. I would affirm. I do not find the trial court erred in submitting an instruction on intervening cause.

An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed. Restatement (Second) of Torts § 441, at 465 (1965). The cases in which the effect of the operation of an intervening force may be important in determining whether the negligent actor is liable for another's harm are usually ... cases in which the actor's negligence has created a situation harmless unless something further oc-

curs.... In such cases, the actor's negligence is often called passive negligence, ... *Id.* at 466. A dependent, intervening force is one which operates in response to or is a reaction to the stimulus of a situation for which the actor has made himself responsible by his negligent conduct. *Id.*

It was established defendant had an obligation to clear the road ditches and failed to do so. It also was established plaintiff voluntarily decided to cut the weeds and the situation only became dangerous when plaintiff exerted himself doing so.

The weeds in the road ditch were basically harmless (at least they would not have caused plaintiff's heart attack) until something else occurred (plaintiff cut the weeds). Plaintiff's injury was not caused by the weeds, it was caused by plaintiff's action in cutting the weeds.

The fact plaintiff's intervention (plaintiff's act of exerting himself to clean the ditch) brought about harm different in kind from that which would otherwise have resulted from the actor's (City's) negligence; and the fact its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation would support a finding an intervening force (plaintiff's actions) is a superseding cause. *See* Restatement (Second) of Torts § 442, at 467 (1965).

While I agree with the majority that caution should prevail in assessing whether a plaintiff's conduct can be an intervening cause, I believe it is clearly applicable in this cause.

Furthermore, I fail to find substantial evidence to support a finding defendant was guilty of any negligence which was a proximate cause of plaintiff's injury. I believe a motion to dismiss plaintiff's claim on this ground, if made, should have been sustained. We are bound to affirm the trial court for any reason whether argued or not. *See State v. Vincik,* 436 N.W.2d 350, 354 (Iowa 1989).